IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM DAVIS, #216943, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:19-CV-156-WHA-CSC |
| | ) |
| DR. JOHN PEASANT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff William Davis, who is confined at the Limestone Correctional Facility in Harvest, Alabama, has filed, pro se, this civil rights action pursuant to 42 U.S.C. § 1983, seeking relief for certain claimed violations of his federally protected rights. This action for damages involves a dispute over the adequacy of medical care and treatment afforded Plaintiff during his incarceration at the Ventress Correctional Facility ("VCF") in Clayton, Alabama. Plaintiff names as defendants, Dr. John Peasant and Wexford Health Sources, Inc. ("Defendants"). Doc. 1.[1]

Defendants filed an answer, special report, and supporting evidentiary materials addressing Plaintiff's claims for relief. Docs. 14, 16. In these documents, Defendants deny they acted in violation of Plaintiff's constitutional rights. Upon receipt of Defendants' special report, the Court issued an Order providing Plaintiff an opportunity to file a response. Doc. 15. The Order informed Plaintiff that his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. *Id*. at 2. The Order further cautioned Plaintiff that unless "sufficient legal cause" is shown within fifteen days of entry of this Order "why such action should not be undertaken, upon the expiration of the time for the plaintiff to file a response as allowed by this order, the court may at any time thereafter and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment, and (2) after considering any response as allowed by this order, rule on the dispositive motion in accordance with law." *Id*. at 3. Plaintiff filed a response and supplemental response to Defendants' special report. Docs. 20, 22.[2] This

---

[1]  On March 26, 2019, the District Court adopted the Recommendation of the Magistrate Judge and summarily dismissed Plaintiff's claims against the Alabama Department of Corrections. Doc. 13.

[2]  In neither response has Plaintiff submitted an affidavit. *See* Docs. 20, 22. Nonetheless, this Court credits "the 'specific facts' pled in [Plaintiff's] sworn complaint when considering his opposition to summary judgment." *Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson,* 786 F.2d 1093,

case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the Court concludes that Defendants' motion for summary judgment (Doc.14) is due to be GRANTED.

## I.     Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id.* at 322-324.

When Defendants meet their evidentiary burden, as they have, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable

---

1095 (11th Cir. 1986) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form."); *Sammons v. Taylor,* 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[F]acts alleged in an inmate's sworn pleading are sufficient and ... a separate affidavit is not necessary.")).

. . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this Court should accept as true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *see also United States v. Stein,* 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the court, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se

status alone does not mandate this court disregard elementary principles of production and proof in a civil case. Here, Plaintiff fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

**II.     Factual Background**

Plaintiff commenced this pro se action for alleged violations of his federally protected constitutional rights while incarcerated at VCF. Doc. 1. Plaintiff alleges Defendants violated his constitutional rights in connection with treating his Crohn's disease. *Id*. Plaintiff asserts, *inter alia*, Defendant Dr. John Peasant ("Defendant Peasant") intentionally placed his life in danger "by not providing [Plaintiff] proper medical treatment or sending [Plaintiff] out to see [a] Free World Crohn's Specialist." *Id*. at 2. Plaintiff argues that Defendant Peasant, rather then send Plaintiff to a specialist, prescribed Plaintiff medication that he knew would not work. *Id*. at 3. For relief, Plaintiff seeks monetary damages for Defendants' cruel and unusual punishment and negligence. *Id*. at 3-4.

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

Defendant Peasant is a licensed physician who currently serves as the Medical Director for VCF. Doc. 14 at 2. While Defendant Peasant is currently employed with Defendant Wexford Health Sources, Inc. ("Defendant Wexford"), he was previously employed by Corizon, LLC, the entity tasked with providing Alabama Department of Correction's inmate healthcare from November 1, 2007, through March 31, 2018. *Id*. Since April 2018, Defendant Wexford has been the entity charged with providing inmate healthcare. *Id*. Plaintiff, an inmate housed in the Alabama Department of Corrections, has suffered from Crohn's Disease for over 20 years. Doc. 14-1 at 7.[3] As explained by Defendant Peasant:

> Crohn's Disease is an inflammatory bowel disease (IBD). It causes inflammation of the digestive track, which can lead to abdominal pain, severe diarrhea, fatigue, weight loss, and malnutrition. Inflammation caused by Crohn's Disease can involve different areas of the digestive track in different people. The inflammation caused by Crohn's Disease often spreads deep into the layers of affected bowel tissue. Crohn's Disease can be both painful and debilitating, and sometimes may lead to life threatening complications. While there is no known cure for Crohn's Disease, therapies can greatly reduce its signs and symptoms and can even bring about long-term remission. In some people with Crohn's Disease, only the last segment of the small intestine (ileum) is affected. In others, the disease is confined to the colon (part of the large intestine). The most common areas affected by Crohn's Disease are the last part of the small intestine and the colon. Signs and symptoms of Crohn's Disease can range from mild to severe. They usually develop gradually, but sometimes will come on suddenly, without warning.

---

[3]     Doc. 14-1 is Defendant Peasant's affidavit.

*Id*. at 4. On August 21, 2017, Plaintiff was transferred to VCF. Doc. 14-1 at 3. A review of Plaintiff's movement history reflects Plaintiff is frequently hospitalized. *See generally*, Doc. 14-2. Just prior to Plaintiff's transfer to VCF, on August 1, 2017, while incarcerated at "Kilby RCC," Plaintiff was transferred to Kilby Infirmary, where he remained until August 18, 2017. *Id*. at 4-5.

On August 10, 2018, Plaintiff was transferred from VCF to St. Clair Correctional Facility. Doc. 14-1 at 3-4. Plaintiff was therefore, incarcerated at VCF approximately one year. Pursuant to Plaintiff's medical records, while confined at VCF, Plaintiff was "repeatedly and often" treated by medical staff. *Id*. at 5, *see also* Doc. 14-3. The following relevant facts relating to Plaintiff's treatment while at VCF, as expressed in Defendant Peasant's affidavit, are undisputed by Plaintiff:

> [O]n January 25, 2018, [Plaintiff] was seen by Mental Health Services and the mental health specialist wrote in [Plaintiff's] chart as follows:
>
>> [Plaintiff] presented as relatively stable. [Plaintiff] came in today with complaints. [Plaintiff] stated that he was not receiving the best medical treatment possible. [Plaintiff] admitted that he refuses to take medication for his health condition because he read where it was not FDA clear to treat his Crohn's disease. [Plaintiff] also admitted to not being compliant with psychotropic medications. [Plaintiff] continues to complain about his condition but will not comply with the treatment that has been set forth for him. The importance of medication compliance was discussed, but more than likely fell on dead ears. [Plaintiff] denied having suicidal or homicidal ideations at this time.
>
> [Plaintiff] was previously prescribed Azathioprine. Azathioprine is an immunosuppressive medication. It is used in patients who suffer from rheumatoid arthritis, granulomatosis with polyangiitis[,] Crohn's Disease[,] and ulcerative colitis. Azathioprine has been used in the management of chronic to severe chronically active Crohn's Disease to maintain clinical remission (absence of disease activity) in corticosteroid-dependent patients, and to provide benefit in people with Fistulizing Crohn's Disease.
>
> [Plaintiff] expressed to the medical staff that he had some hesitancy and fear taking Azathioprine and therefore it was discontinued in February 2018. He was switched medications and prescribed Delzicol. Delzicol affects a substance in the body that causes inflammation, tissue damage and diarrhea. Delzicol is used to treat mild to moderate ulcerative colitis. The medicine is also used to prevent the symptoms of ulcerative colitis from reoccurring.
>
> Due to [Plaintiff's] Crohn's Disease, he was on the chronic clinic patient list and was seen regularly by the health staff at [VCF].
>
> On April 18, 2018, after informing the nursing staff that his Crohn's Disease was severely active, [Plaintiff] refused to be seen by [Defendant Peasant] and walked

5

out of the health care unit after his assessment from the nurse. [Plaintiff] refused to sign the Release of Responsibility form.

On April 26, 2018, [Plaintiff] refused to have any blood drawn and therefore his lab work could not be performed.

[Plaintiff] had an appointment to be seen by [Defendant Peasant] at the health care unit at [VCF] on May 7, 2018. However, [Plaintiff] missed his appointment on that date.

The medical records reveal that on June 23, 2018, that [Plaintiff] was placed in segregation (restrictive housing) by the Alabama Department of Corrections. [Plaintiff] stayed in segregation until August 10, 2018, when he was transferred to the St. Clair Correctional Facility.

The medical records reveal that [Plaintiff] had a 20 year history of Crohn's for which he had apparently been seen by multiple physicians and medical personnel.

The medical records reveal that subsequent to being transferred from [VCF] to the St. Clair Correctional Facility and then the Donaldson Correctional Facility, [Plaintiff's] medical treatment was nearly identical to his treatment that he received at [VCF], under [Defendant Peasant's] supervision as the Medical Director.

On September 20, 2018, some six weeks after being transferred from the [VCF], [Plaintiff] was seen at the UAB Emergency Room. The ER physician's notes from September 20, 2018, state in part as follows:

> Chief Complaint (DCF) Pain in lower back and rectum PMHX: Crohn's.
>
> History of present illness:
>
> Additional history – patient is a 35 year old male with a history of Crohn's Disease with multiple enteroenteric and enterovesicular fistulas as well as interim spinal fistula. Resulting in epidural abscess, chronic UTIs and multiple bowel resections as well as history of perianal abscess who presents coming complaining of rectal pain with puss draining from rectum for the past month as well as low back pain and shaking chills. He denied any nausea, vomiting, abdominal pain, hematochezia, melena. He is able to tolerate p.o. No new neurologic symptoms. He is able to ambulate without problem.
>
> Medical decision making:
>
> DDx and rationale: 35 year old make with history as above who presents the emergency room department complaining of one month of rectal pain with purulent discharge from rectum as well as low back pain for one month. Patient has a history of intraspinal fistula with epidural abscess. CT scan obtained in triage concerning with air within

6

spinal canal. Labs obtained triage significant for elevated ESR and CRP. Patient otherwise well appearing. Will obtain MRT and L-sine.

CT abdomen and pelvis w contrast – 09/20/18

Impression:

1. Progression of inflammatory standing in the presacral with foci of air extending into the spinal canal. Findings are suggestive of fistulous inflammatory bowel disease. No discrete abscess is identified.

2. Questionable periosteal reaction or cortical indistinctness along anterior margin of the sacrum. Given the adjacent inflammatory changes, early sacral osteomyelitis cannot be excluded.

3. Progression of bowel wall thickening and inflammation in the neoterminal ileum. Consistent with active inflammatory bowel disease.

4. Non-obstructing right nephrolithiasis. As the attending physician, I have personally reviewed the images, interpreted and/or supervised the study or procedure, and agree with the wording of the above report.

[Plaintiff] was seen at UAB again on October 1, 2018. The reason for the consult was noted as fistulizing Crohn's Disease, management. The history of the present illness was noted by the UAB specialist as follows:

> [Plaintiff] is a 35 year old male w/ Crohn's Disease complicated with multiple fistulas (entero-vesicular, entero-enteric, entero-spinal) and perianal abscesses presents to UED 9/20 w/ acute worsening of rectal and lower back pain and found to have epidural abscess and L5-sacral osteomyelitis and worsening inflammatory changes c/f new fistulae in colon. Patient was started on Cefepime and Flagyl. Colonoscopy 9/24 w/ 3mm fistula 60 cm proximal to anus. Patient underwent exploratory laparotomy, lysis of adhesions, small bowel resection, primary bladder repair, partial rectal resection and colonoscopy on 9/25 by Dr. Chu and intraoperatively found a fistula of small bowel to colon to bladder which was resected and repaired as above. He notably had a piece of rectum retained in his intraabdominal cavity as this was tightly adhered to the sacrum. ID has been following along and is treating for 6 weeks of IV antibiotics for presumed meningitis. Given fistula, unable to perform LP and Osteomyelitis w/ cafepine #6 g/day x 2 weeks followed by 4 g/day and PO metronidazole 500 mg BID with plan to see in clinic for repeat imaging. Urology also following along and plan for Foley to stay in place for 2 weeks due to repair of enterovesical fistula. Patient is currently incarcerated. He has previously been on Remicade, and was last discharged 7/2017 on Imuran and Mesalamine but only taking Mesalamine. He has been off Remicade X one year given cost issues. Last colonoscopy 2006.

7

>[Plaintiff] had a follow up with the Department of Gastroenterology at UAB on December 3, 2018. The history of present illness is noted in [Plaintiff's] chart as follows:
>
>>36 year old AAM with a complex history of Crohn's Disease (dx 1997) cb enteroenteric and enterovesicular fistulars. Patient is currently incarcerated. He has previously been on Remicade, and was last discharged 7/2017 on Imuran and Mesalamine but only taking Mesalamine. He has been off Remicade X one year given cost issues. Last colonoscopy 2006.
>
>[Plaintiff] had a follow up with the Department of Gastroenterology at UAB on December 3, 2018. The history of present illness is noted in [Plaintiff's] chart as follows:
>
>>36 year old AAM with a complex history of Crohn's Disease (dx 1997) c/b enteroenteric and enterovesicular fistulars and UTIs (since 2004; s/p bowel resection 2004 and 2006) perianal abscess and fistulars, and reported h/o enter-spinal fistula c/w epidural abscess requiring emergent surgery in 2014 who presented to follow up recent hospitalization. Admitted in 9/2018 for rectal pain, drainage of puss per rectum, and subjective fevers. MR lumbar spine was then performed which showed a fistulous tract from rectum to the S1 anterior epidural space with no discrete fluid collection, extensive sacral edema consistent with osteomyelitis at L5, small abscess near L5 nerve root (presacral space), and severe narrowing of S1-S2 lateral recesses likely compressing descending S2 nerve roots. He underwent colonoscopy which showed 3 mm fistula at 60 cm proximal to (the anus) but otherwise unremarkable. On 9/25 he underwent exploratory laparotomy, primary repair of bladder, partial resection of rectum and sigmoid, and colostomy for the colo-spinal fistula and enterovescular fistula. He was discharged on Cefepine and Flagyl that finished about one month ago. He was started on Inflectra 340 mg (last dose 11/30) and Imuran 125 mg daily. He currently has no blood in his ostomy output and occasionally has the urge to defecate with mucus per rectum. He denied any fevers or chills.
>
>The medical records reveal that [Plaintiff] has been suffering from a complex history of Crohn's Disease since 1997. [Plaintiff] has had enteroenteric and enterovesicular fistulars and UTIs since 2004 and underwent bowel resections in 2004 and 2006. Furthermore, [Plaintiff] had an epidural abscess requiring emergent surgery in 2014. The medical records reveal therefore, [Plaintiff] has had a complex and complicated history with regard to Crohn's Disease for many years.

Doc. 14-1 at 5-10. Additional facts are set forth as necessary.

## II.     Discussion

In his complaint, Plaintiff asserts, Defendant Peasant, who was "very aware that [Plaintiff]

suffer[s] from Crohn's Disease,…refused to send [Plaintiff] to [a] Crohn's Specialist that [sic] knew how to better treat [his] ongoing situation. Instead [Defendant Peasant] gave [Plaintiff] medication for [his] disease that he knew wouldn't work." Doc. 1 at 3. Plaintiff asserts Defendants were negligent because, "on 6-16-18 a urine culture and blood work was [sic] done and E.coli was founded [sic] and [Defendant Peasant] knew from my long history of holes occurring in my intestine that something was seriously wrong with me. But he didn't get me no treatment and he didn't even notify me. Sept. 20 I was rushed to UAB. I had a very nasty surgery now I have to be on a colostomy for the rest of my life." *Id*. Plaintiff asserts Defendants' actions violated his federally protected rights. *See generally*, Doc. 1.

Defendants assert, *inter alia*, Plaintiff's claims against Defendant Wexford, at most, sound in *respondeat superior* liability, and, as to his claims against Defendant Peasant, Plaintiff fails to show Defendant Peasant was either deliberately indifferent or that he committed medical malpractice. *See* Doc. 14.

### A. Defendant Peasant

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

While incarcerated at VCF, from August 2017 to August 2018, Plaintiff asserts Defendant Peasant failed to prescribe effective medication, failed to send Plaintiff to a Chron's Disease specialist, and, in June 2018, failed to treat Plaintiff following a urine culture and blood work which demonstrated the presence of E. coli. Doc. 1. In his supplemental response to Defendants' special report, Plaintiff asserts Defendant Peasant was deliberately indifferent, in part, because he failed to prescribe Plaintiff the medication, Remicade. Doc. 22 at 3. Plaintiff maintains that he was once prescribed Remicade, that the medication was effective in treating his Crohn's Disease, and that, because Defendant Peasant discontinued the medication, his symptoms worsened. *Id*. at 3-4.

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To demonstrate a denial of medical care in violation of the Eighth Amendment, Plaintiff must prove both an objective and subjective component. The objective element requires Plaintiff to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. (quotation marks and citation omitted).

The subjective component of Plaintiff's medical claim requires that he demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243. Deliberate indifference is shown by establishing that a defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. It may be demonstrated by either actual intent or reckless disregard. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id*. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding a defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). "[A]an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

"Deliberate indifference" also entails more than mere negligence. *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 835.

> The Supreme Court clarified the "deliberate indifference" standard in *Farmer* by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970, 128 L.Ed.2d 811. In interpreting *Farmer* and *Estelle*, this Court explained in *McElligott* that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott*, 182 F.3d at 1255; *Taylor*, 221 F.3d at 1258 (stating that defendant must have subjective awareness

of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

*Farrow*, 320 F.3d at 1245-46.

"Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill*, 40 F.3d at 1187 (quotation marks and citations omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id*.

> The seriousness of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious. An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that [t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay. Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill*, 40 F.3d at 1188-89 (quotation marks and citations omitted) (footnotes omitted). Further "whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quotation marks and citation omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (holding that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution).

Defendants' evidence includes an affidavit from Defendant Peasant, Plaintiff's movement history, and Plaintiff's medical records while confined in the Alabama Department of Corrections. Docs. 14-1, 14-2, 14-3, 14-4. As noted *supra*, Defendant Peasant, Medical Director for VCF, is a licensed physician in the state of Alabama. Doc. 14 at 2. Defendant Peasant, once employed by Corizon, LLC, is now employed by current inmate healthcare provider, Defendant Wexford. Defendant Peasant provided extensive testimony in his affidavit, explaining Plaintiff's Crohn's Disease and how he and his staff treated Plaintiff. Doc. 14-1. Citing to Plaintiff's medical records, Defendant

Peasant further provides testimony as to Plaintiff's future treatments in other institutions of incarceration. *See supra*, Section II, "Factual Background."

Assuming Plaintiff's condition presents a serious medical need, which is not in dispute, Plaintiff presents no evidence sufficient to create a genuine issue of disputed fact regarding the claim Defendant Peasant acted with deliberate indifference to his medical needs. First, as to Plaintiff's allegations that Defendant Peasant failed to either prescribe Plaintiff's desired medication or refer Plaintiff to a specialist, "to recover on his claim[s] of inadequate medical care, [Plaintiff] had to prove that [Defendant Peasant] engaged in 'acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs.'" *Hamm*, 774 F.2d at 1574-75 (citing *Estelle*, 429 U.S. at 106) (further citation omitted). Though "[a] 'doctor's decision to take an easier and less efficacious course of treatment' may constitute deliberate indifference;…a mere difference of opinion between the doctor and a prisoner as to the proper diagnosis or course of treatment will not." *Wallace v. Sheriff*, 518 F. App'x 621, 622 (11th Cir. 2013) (quoting *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989)).

While Plaintiff claims he should have received a different prescription or should have been referred to a specialist, his evidence supporting these claims, is sparse. Plaintiff provides no expert or other evidence that Defendant Peasant's actions failed to meet appropriate professional standards. The only evidence concerning these allegations are Plaintiff's sworn complaint and Plaintiff's June and July 2018 medical records. *See* Doc. 20-1, 20-2, 20-3. Plaintiff also conclusory asserts, but for Defendant Peasant withholding Remicade from Plaintiff, his symptoms would not have worsened.

Defendants, however, presented testimony and medical records demonstrating Plaintiff made numerous visits to VCF's health care unit where he was usually treated by the registered nurse on duty. The records indicate that physicians examined Plaintiff as well. The records further show Plaintiff missed scheduled medical appointments, occasionally refused to take prescribed medication, and refused to see Defendant Peasant. When Plaintiff showed concern as to his medication, however, Defendant Peasant prescribed Plaintiff a different medication. This evidence shows that Plaintiff received significant medical care while at VCF. "Although [Plaintiff] may have desired different modes of treatment, the care Defendant Peasant provided did not amount to deliberate indifference." *Hamm*, 774 F.2d at 1574-75 (citing *Bass v. Sullivan,* 550 F.2d 229, 231-32 (5th Cir.), *cert. denied,* 434 U.S. 864 (1977); *accord, Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (1st Cir.1981) ("Where a prisoner has received … medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law.")).

Insofar as Plaintiff alleges Defendant Peasant withheld treatment in June 2018, while Plaintiff was in administrative segregation, again, Plaintiff's evidence does not create a genuine issue of material fact as to this claim. In his complaint, Plaintiff asserts, on June 16, 2018, he had blood and urine tests performed, yielding a showing of E. coli. Plaintiff contends, notwithstanding Defendant Peasant's knowledge of Plaintiff's condition, he did nothing to treat Plaintiff. Defendants' evidence, however, shows, *inter alia*, (1) June 4, 2018, Plaintiff was prescribed Cipro, Delzicol, and Remeron as part of his "Chronic Disease Clinic Follow-up" (Doc. 41-3 at 42); (2) June 17, 2018, Plaintiff was seen for his rectal pain and medical personnel prescribed Toradol (*id*. at 43); (3) June 19, 2018, Plaintiff was seen for his rectal pain and medical personnel directed Plaintiff to take Motrin and his other medications as ordered (*id*. at 44); (4) June 21 and 22,[4] 2018, medical personnel assessed Plaintiff (*id*. at 48-50); (5) July 6, 2018, Plaintiff was seen for his rectal pain and medical personnel prescribed an abdominal binder "for hernia" (*id*. at 54); and (6) July 6, 2018, Plaintiff was provided the abdominal binder and was directed to wear the binder for 180 days. *Id*. at 55.

The undisputed evidence reflects Plaintiff received timely and appropriate access to prison medical providers during his confinement at VCF who examined and treated him for his medical condition.

The record demonstrates medical personnel at VCF responded to Plaintiff's complaints and provided medical care for him consistent with his medical history. Their responses to his condition, as attested to by Defendants and uncontroverted by Plaintiff, were reasonable and appropriate. Defendant Peasant's affidavit regarding the provision of medical care afforded Plaintiff at VCF is corroborated by the contemporaneously compiled objective medical records. *See* Docs. 14-1, 14-3, 14-4. The law is settled that "[s]elf serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records," and they do not do so here. *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)). While the record clearly evidences Plaintiff required significant medical treatment both before and after his incarceration in VCF, Plaintiff presents no evidence showing the way Defendant Peasant—or any medical personnel—addressed his medical concerns or condition created a substantial risk to his health that the attending health care personnel consciously disregarded. The record is therefore devoid of evidence—significantly probative or otherwise—showing that Defendant Peasant acted with deliberate indifference to a serious medical need experienced by

---

[4] It appears Plaintiff was seen by medical personnel on two separate occasions on June 22, 2018. Doc. 14-3 at 49, 50

Plaintiff. *Farmer*, 511 U.S. 825; *Quinones*, 145 F.3d at 168. Accordingly, Defendant Peasant is due to be granted summary judgment on Plaintiff's Eighth Amendment claim.

### B.     Defendant Wexford

Plaintiff generally alleges that Defendant Wexford, through the actions of the medical providers at VCF, acted with deliberate indifference to his serious medical needs. The law is settled that, generally, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotation marks and citation omitted). The Eleventh Circuit has extended that rule to private corporations like Defendant Wexford. *See, e.g.*, *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Where the state and the entity enter such a contractual agreement, the private healthcare company is a "person" acting under color of state law, and thus may be liable under § 1983. *Howell v. Evans*, 922 F.2d 712, 723-24 (11th Cir.) *vacated pursuant to settlement*, 931 F.2d 711 (11th Cir. 1991), *and opinion reinstated sub nom. Howell v. Burden*, 12 F.3d 190 (11th Cir. 1994) (internal citation omitted). By virtue of the contract, the private entity also "performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under section 1983." *Craig*, 643 F.3d at 1310 (internal quotation marks omitted). Accordingly, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that a municipality cannot be held liable on a theory of *respondeat superior*), a private entity providing medical services to inmates pursuant to a contract with the state is only liable under § 1983 where it employs a custom or policy constituting deliberate indifference to an inmate's serious medical need. *See Howell*, 922 F.2d at 724 n.13 (noting that the policy or custom analysis applied to a corporation is the same as the analysis applied to municipalities under *Monell*). To hold a defendant liable as a supervisory official, a plaintiff must show that "the supervisor personally participate[d] in the alleged constitutional violation or [that] there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Hartley*, 193 F.3d at 1269.

The challenged policy or custom need not be express. A policy is "a decision that is officially adopted" or created on behalf of the entity. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A custom is any practice that is "so settled and permanent" as to carry the force of law. *Id*. To establish the existence of a custom, the evidence must show more than an isolated incident leading to constitutional injury, and instead, must reflect the pattern is widespread. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). To show the practice at issue is sufficiently widespread to constitute a custom, a plaintiff ordinarily must produce evidence that the practice resulted in deficient treatment of other inmates. *See Craig*, 643 F.3d at 1312. Ultimately, the plaintiff must

14

produce sufficient evidence of a "series of constitutional violations from which deliberate indifference can be inferred." *Id*. (quoting *Estate of Novack ex rel. Turbin v. Cty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000)).

On this record, Plaintiff has not produced sufficient evidence to establish a genuine dispute of material fact regarding whether Defendant Wexford implemented a policy or custom evidencing deliberate indifference to his serious medical needs. Specifically, Plaintiff produces no evidence of a custom or policy implemented by Defendant Wexford to withhold medically necessary medical care or treatment to save money nor evidence of a permanent widespread practice to deny necessary medical care or treatment to inmates to control costs. *See Craig*, 643 F.3d at 1310 (explaining that to impose liability under § 1983, a plaintiff must prove that a municipality had a "policy or custom" of deliberate indifference that led to the violation of his constitutional right). Defendant Wexford is, therefore, due to be granted summary judgment. *See Hartley*, 193 F.3d at 1269.

### C. The Exercise of Supplemental Jurisdiction

Plaintiff complains that the medical care and treatment provided to him by Defendants implicates the state tort of medical malpractice. Review of such a claim is only appropriate upon exercise of the Court's supplemental jurisdiction. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In the posture of this case, however, the exercise of such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, 'the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact."'" *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984). The exercise of supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428. In view of this Court's resolution of the federal claim presented in the complaint, Plaintiff's supplemental state tort claim is due to be dismissed. *Gibbs,* 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### III. Conclusion

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment filed by Defendants (Docs. 14), be GRANTED[5] with respect to Plaintiff's federal claims.

2. Plaintiff's Pendent state law claims be DISMISSED without prejudice.

3. Judgment be ENTERED in favor of Defendants.

4. This case be DISMISSED with prejudice.

**On or before December 23, 2021**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 9th day of December 2021.

/s/ CHARLES S. COODY
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[5] While the Court recommends granting Defendants' motion for summary judgment, to the extent Defendants seek reimbursement of all costs and fees incurred in defense of this action (Doc. 16 at 6), the Magistrate Judge recommends denying this request. "Under [42 U.S.C.] § 1988, a prevailing defendant is entitled to recover attorney's fees if 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Sibley v. Levy*, 203 F. App'x 279, 280–81 (11th Cir. 2006) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)). To determine "whether a suit is frivolous, a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Id.* (quoting *Sullivan v. Sch. Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir.1985)) (internal quotations and citation omitted). "The three factors we have noted to be used in determining if a claim was frivolous are: '(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.'" *Id.* (quoting *Sullivan*, 773 F.2d at 1189). While the Eleventh Circuit acknowledges frivolous cases may be dismissed on summary judgment (*id.*), here, the Court recommends dismissal, without prejudice, Plaintiff's state law claims. Based on a review of the record, the Court does not find this case to be frivolous and recommends denying Defendants' request for reimbursement.